FILED
IN CLERK'S OFFICE
US.DISTRICT COURT E.D.N.Y.

★ APR 05, 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
Aaron Gutierrez,

              Petitioner,

   - against -

Michael Capra,

              Respondent.

-----------------------------------X

**MEMORANDUM & ORDER**

14-CV-6887 (KAM)

**MATSUMOTO, United States District Judge:**

       *Pro se* petitioner Aaron Gutierrez ("petitioner") seeks a writ of *habeas corpus* pursuant to 28 U.S.C § 2254 in the United States District Court for the Eastern District of New York challenging his convictions of murder in the second degree, attempted murder in the second degree, assault in the second degree and criminal possession of a weapon in the fourth degree. (*See* ECF No. 1, Petition for Writ of Habeas Corpus ("Pet.").)

BACKGROUND

**I.   Crimes of Conviction and Criminal Charges**

       Petitioner's conviction stems from the murder of a female victim and attempted murder of another female victim. On March 12, 2003, petitioner, in possession of $2300 in cash went shopping for new clothes and then to a bar with friends. (ECF No. 9-8, State Ct. R. of the June 26, 2006 Proceedings, at 17, 20). Petitioner then arrived at a strip club around 2:45 a.m.

1



on March 13, 2003. (*Id.* at 19.) [1] When petitioner exited the strip club around 4:10 a.m., one of the female dancers, Marli Ambrosini ("Ambrosini"), approached him. (*Id.* at 21.) Petitioner and Ambrosini then decided to reserve a hotel room that petitioner booked under a false name. (*Id.* at 58-59.) Around that time, Ambrosini called her roommate Hilauricea Biz ("Biz"), and told her petitioner had offered to pay them $400 each to have sex with them. (ECF No. 9-4, State Ct. R. of the June 20, 2006 Proceedings, at 81.) After Petitioner and Ambrosini had sex at the hotel, they left the hotel, and around 6:30 a.m. arrived at Ambrosini and Biz's apartment. (ECF No. 9-8 at 27.)

Ambrosini then gave her roommate Biz $300 cash and asked her to come into the living room. (ECF No. 9-4 at 82.) The three then engaged in sexual relations. (*Id.* at 86.) After the sexual encounter, Biz showered and went back to the room. (*Id.*) Ambrosini then entered the room and gave Biz another $100 because petitioner was paying to stay the night. (*Id.*) At trial, Biz testified that later that night she heard a loud noise and went to ascertain the source of the noise. (*Id.* at 90.) After calling for Ambrosini to make sure everything was

---

[1] References to page numbers in documents filed electronically are the page numbers assigned by the Electronic Court Filing System ("ECF").

all right and not receiving a response, she went to investigate where the sound came from. (*Id.*) When she got to the bathroom door, Biz saw petitioner bent over inside the bathtub. (*Id.* at 91-93.) Feeling as though something was wrong, Biz turned around to summon help. (*Id.* at 93.) Biz testified that when she turned around to go get help, she was attacked by petitioner from behind with a knife or other sharp object. (*Id.* at 94.) She sustained cuts to her neck, shoulder and wrist (*Id.* at 95.)

Petitioner told a different story at trial. Petitioner testified that while he was at the hotel with Ambrosini, she mentioned she had a cousin at home so they "could have a good time" together. (ECF No. 9-8 at 26.) Petitioner also testified that at no point did he make a payment for sex with the women. (*Id.* at 26-27.) After the sexual interaction, petitioner claimed he could not find his glasses and that the "wad [of money he had] look[ed] a little smaller". (*Id.* at 35.) Petitioner testified that although he knew "something was not right, and wanted to leave...(he) gave them the benefit of the doubt and everything was going to be fine so (he) decided to take a shower". (*Id.* at 36.)

Petitioner testified that while he was in the shower he was hit on the side of the head and forehead by either Biz or Ambrosini. (*Id.* at 37.) He claims that Ambrosini had a bottle in her hand and Biz had a knife. (*Id.*) Petitioner testified

3

that Biz stated something about "money" and swung the knife at him. (*Id.*) Petitioner claimed that he grabbed the knife from Biz and began to swing it at the women in self-defense. (*Id.*) Petitioner claimed that he then gathered his stuff and "stormed out of the place." (*Id.* at 39.)

After the confrontation, Biz fled the apartment and went to the street to find help. (ECF No. 9-4 at 95.) There, witnesses called 911. (*Id.* at 96.) Around that time, petitioner was seen fleeing the apartment complex with a something in his hand which he then threw into the garden next to the apartment. (*Id.*)

When the police arrived they first encountered Biz, who was bleeding from her neck and shouting "my friend." (ECF No. 9-4 at 41-42.) The police then entered the apartment and found Ambrosini lying on the bathroom floor. (*Id.*) There was blood in the bathroom as well as the living room, dining room, and kitchen area. (*Id.* at 64.) Detectives investigating the scene recovered a bloody knife with a serrated blade from the kitchen floor. (ECF No. 9-6, State Ct. R. State Ct. R. of the June 22, 2006 Proceedings, at 52.) Police also found a broken Absolut brand vodka bottle on the front steps and on the front walkway of the apartment. (ECF No. 9-6 at 94.)

Around 9:00 AM police officers on patrol received a radio call that there was an assault in progress along with a

description of a male who was last seen wearing a red shirt leaving the location. (ECF No. 9-5, State Ct. R. of the June 21, 2006 Proceedings, at 71.) While canvassing the area, the police found a man who stated he had seen someone running that matched the description of the man the police were looking for. (*Id.* at 72.)

The police found petitioner in a red sweatshirt ten blocks from the crime scene. Petitioner was out of breath, apparently due to running. (*Id.* at 73.) The officers placed petitioner in handcuffs and took him back to the scene of the crime. (*Id.)* Once they returned, Biz positively identified petitioner as the person who had committed the crime. (*Id.* at 78.) After the positive identification, petitioner was taken back to the precinct. (*Id.* at 79.) At the precinct, the police recovered $1,138 from petitioner, and advised petitioner of his *Miranda* rights, after which he gave oral and written statements to detectives. (*Id.* at 79; ECF No. 9-5 at 108-112).

During his interview with detectives, there was redness on petitioner's forehead and a small cut to his left forearm and a very small cut right above the thumb of his right hand. (ECF No. 9-5 at 114). The detectives called for medical attention, but petitioner did not have to go to the hospital. (*Id.* at 114-15.) Petitioner received a band aid for the cut. (*Id.* at 115.)

A medical examiner performed an autopsy on the body of Ambrosini. (ECF No. 9-7, State Ct. R. of the June 22, 2006 Proceedings, at 102.) Ambrosini had two stab wounds, one to the front of her chest and one on the back of her left shoulder. (*Id.*) Further, the victim had thirty-one other incised wounds. (*Id.*) When the internal autopsy took place, the examiner determined that the chest stab was associated with hemothorax, which is bleeding in the chest cavity as well as bleeding around the heart. (*Id.* at 104). The stab wound went through "skin and then the tissue, the soft tissue, the fatty tissue underneath the skin, the left sixth rib, the sac around the heart, through the chamber of the heart, and then it also made a hole in the sac around the back of the heart". (*Id.* at 105.)

Dr. Ambrosi reviewed the medical reports of Biz. (*Id.* at 119.) Biz had wounds on her shoulder, wrist, and neck. (*Id.*) Altogether, the wounds required twenty-six stiches. (*Id.*) Further, the doctor reviewed petitioner's medical examination from that night and determined that both of petitioner's wounds were superficial, and insignificant compared to those Ambrosini received. (*Id.* at 121.)

Petitioner was charged with two counts of murder in the second degree, two counts of assault in the second degree, and one count of criminal possession of a weapon in the fourth degree.

6

## II.  Court Proceedings

Because she spoke Portuguese, Biz elected to use a court interpreter to provide translation services during Biz's testimony at trial. The court interpreter first alerted the court of her inability to concentrate during cross examination of Biz.  (ECF No. 9-4 at 113.)  At that time, the court reporter asked for, and was granted, a break.  (*Id.*)  After the brief break, the proceedings began again without immediate issue or request from the interpreter.  (*Id.* at 114.)  Later, during Biz's cross examination, the interpreter asked for a five-minute break so that she could take a seat.  (ECF No. 9-5 at 4.) Because the interpreter asked for a break in the middle of an important question of the cross examination, the judge asked the interpreter to continue a little while longer.  (*Id.*)  The interpreter translated a few additional questions and responses and requested a break again.  (*Id.* at 8.)  The judge granted the break and the interpreter took a break while the judge spoke to the parties' attorneys at side bar.  (*Id.* at 8.)

During the side bar conversation, the judge stated "the interpreter feels abused by being asked to come back into the courtroom now.  She is almost in tears.  I can't see how we are going to continue with this interpreter."  (*Id.*)  The court,

however, allowed the interpreter to continue translating for Biz after in the interpreter return from her break. (*Id.*) The interpreter raised no further issues.

Petitioner also raises six arguments regarding the prosecution's actions during summation. (ECF No. 9-11, Appeal from a Judgment of the Supreme Court County of Queens, at 45.) Petitioner argues that the trial court acted improperly because it did not "exercise its control over the courtroom by stepping in during the prosecutor's summation". (*Id.*) Petitioner also argues that the People voiced their personal opinions of petitioner's guilt when they opened the summation with "he did it" and that he was "guilty of murder". (*Id.* at 40-41.) Petitioner asserts that the People acted improperly in stating that the defense counsel was wanting to "get [the jury] to forget what his client did to those women." (*Id.* at 51.) Petitioner further argues that the prosecutor acted improperly in claiming that the defendant was lying. (*Id.*) Further, petitioner claims that the prosecutor improperly inflamed the jury by arguing that no matter the occupation of the women they did not deserve to be "butchered like an animal." (*Id.* at 54.) Next petitioner argues that the prosecutor improperly commented that:

> [E]verybody on the street could tell who the victim
> was and who the perpetrator was, the guy who is
> running away with the broken bottle is the

8

perpetrator. The woman standing there running from
the defendant screaming for help is the victim. They
didn't need any DNA for analysis.

(*Id.* at 55)   Finally, petitioner asserts that the prosecution

was improper in stating "if both of the [victims] had been

killed inside of that apartment, ladies and gentlemen, he never

would have been caught" and that the defendant "would have

gotten away it" had the police not caught him.   (*Id.* at 47)

Respondent's affidavit and memorandum of law in

opposition to the petition for a writ of *habeas corpus* argue

that the actions of the prosecuting attorney were reasonable

responses, considering both the evidence and the actions of the

defense attorney's summation.   (ECF No. 8, Memorandum in

Opposition to Petition for Writ of Habeas Corpus "Opp. Mem.", at

42-43.) In its memorandum, respondent states that the prosecutor

did not improperly state her personal opinion that petitioner

was guilty but, rather, was commenting on petitioner's

statements during the trial, admitting that he had killed

Ambrosini.   (*Id.* at 41.)   Respondent's memorandum also asserts

that the prosecutor did not state her personal belief that

petitioner murdered Ambrose and was guilty, but was instead was

asking the jury to take notice of petitioner's demeanor when he

viewed the autopsy and other photos of the victims.   (*Id.*)

Respondent argues that it was proper to ask the jury to consider

petitioner's behavior during trial, "especially during

potentially highly emotionally charged points, where petitioner
had appeared to be indifferent." (*Id.*)

Respondent also disputes that the prosecutor
improperly stated that petitioner had lied. (*Id.* at 42.)
Instead, respondent asserts that the prosecutor was responding
to the defense counsel's argument that petitioner had been
honest and "unbelievably consistent." (*Id.*) Respondent further
contends that the prosecution was addressing petitioner's claim
of self-defense by describing it as a "tall tale" and referred
to petitioner's injuries as minor, in comparison to the victims'
injuries and noting that one victim was stabbed from the behind.
(*Id.*) Respondent's memorandum claims the comments regarding the
evidence were proper, particularly given Dr. Ambrosi's testimony
that stated that petitioner's injuries were insignificant in
comparison to the victims' injuries. (*Id.*)

During summation, petitioner claimed that the
surviving victim was not credible, and made numerous comments
about her job as an exotic dancer. (ECF No. 9-8 at 129-137.)
In response, the prosecutor argued that the victim did not
deserve to be butchered like an animal, even I she had engaged
in risky behavior. (Opp. Mem.at 43-44.)

Lastly, respondent argues that the prosecutor's
comments on petitioner's flight from the scene of the crime was
proper because the trial evidence itself showed that petitioner

was apprehended a short distance from the crime scene, running down the street, carrying a tee shirt, with his sneakers untied. (*Id.* at 44.) Respondent argues that the prosecutor's statement that petitioner was caught because he failed to kill both women was proper because they "merely asserted that petitioner was caught because one victim survived the attack was "a fair comment under the circumstances here, and no objection by counsel was merited." (*Id.* at 45.) Respondent notes that there was no evidence that the victims knew petitioner prior to the crime, that petitioner used an alias to register at the hotel with the murder victim, and that the surviving victim ran from the crime scene, yelling for help. (*Id.*) At no point did defense counsel object to these specific remarks during summation. There were, however, defense objections to other parts of the prosecutor's summation which the judge overruled. The defense counsel objected during summation to the characterization of the crime by the prosecution, and the court ruled that the prosecutor's arguments were based on evidence and the jury would make their own decision about the weight to give them. (ECF No. 9-9, State Ct. R. of the June 26, 2006 Proceedings, at 55.). The defense counsel also generally objected when the prosecution argued in summation that petitioner had his hand over Ambosini's mouth in the bathroom when he attacked her. (*Id.* at 56.) The court responded by

stating that "something speculative is an assessment[,] [the jury] can draw it . . . if [the jury] think[s] it[']s had a reasonable inference [the jury] will be allowed to adopt this. Attorneys are making arguments." (*Id.*) The court overruled the defense objection to the prosecution's argument that petitioner would never have been caught if he had killed victims, because petitioner used an alias at the hotel. (*Id.* at 62.) The court stated that it was a fair argument, given that the prosecution met the objection with the counterargument of "take all these things about him". (*Id.*)

After summation, the jury was instructed by the court to "not be a detective and get involved in speculation or guess work about what could or should have been," and to, "[d]ecide the case solely on the evidence actually presented or lack of evidence." (*Id.* at 67.) The court also told the jury that it was not bound by any of the arguments made by the attorneys during summation, but if the jury found one was reasonable and logical and consistent with the evidence, then the jury was free to accept that argument. (*Id.* at 67.) The jury was also instructed on the elements of each individual charge, including the requirements of intent. (*Id.* at 86.) During deliberations, the jury sent a note to the judge asking for clarification on the elements of the crimes, and to re-watch petitioner's videotaped statement. (*Id.* at 114.) The court proceeded to

12

show the video, and reiterate the jury instructions regarding all of the charges, including intent. (*Id.* at 116-124.)

### III. Verdict and Sentencing

On June 28, 2006, the jury returned a verdict of guilty on the following counts: murder in the second degree, attempted murder in the second degree, assault in the second degree, and criminal possession of a weapon in the fourth degree. (ECF No. 9-10, State Ct. R., at 4-5.) On July 18, 2006 , petitioner was sentenced to twenty-five years to life for the murder in the second degree; ten years for attempted murder in the second degree to run consecutively to the murder in the second degree sentence, with five year post-release supervision; seven years for assault in the second degree to run concurrently with the first sentence; and one year for criminal possession of a weapon in the fourth degree count which merged by imposition of law. (*Id.* at 24-25.)

### IV. Post-Conviction Proceedings

A. <u>Petitioner's Direct Appeal to the Appellate Division</u>

On November 7, 2012, petitioner appealed his conviction to the New York State Supreme Court Appellate Division, Second Department. Petitioner appealed on the following bases: (1) he was deprived of his right to a fair trial, (2) the prosecutor committed errors in summation, (3) the court erred in not informing the jury on the requirements for

the element of intent to be found, and (4) the court also erred
in failing to charge the lesser offenses of manslaughter 2,
manslaughter 1, and criminally negligent homicide. (ECF No. 9-
11 at 18, 45, 62.)

Petitioner argued on appeal that he was deprived of
his right to a fair trial because the interpreter expressed an
inability to perform her duties twice, and stated that she could
not concentrate. (*Id.* at 19-21.) Petitioner also alleged that
the prosecutor engaged in misconduct during summation and cross-
examination. (*Id.* at 48-53.) Next, petitioner alleged that the
court's charge was not complete and proper because it did not
include the lesser charges available. (*Id.* at 62.)
Specifically, petitioner argued that the judge should have
instructed the jury regarding whether or not intent could be
found if petitioner was acting in self-defense. (*Id.* at 67.)
Lastly, petitioner argued that he was denied the effective
assistance of counsel because his counsel did not object when
the above challenged conduct occurred. (*Id.* at 30.)

On June 5, 2012, (*id.* at 79), the People responded
that the appellate court could not review petitioner's claim
regarding the interpreter because the claim relied on facts that
were not on the record. (*Id.* at 100.) The People further
argued petitioner's claims about the interpreter were
unpreserved and that the court gave reasonable accommodation to

14

the interpreter during trial. (*Id.* at 100.) The People also argued that the prosecutor's comments were fair and any challenges to the prosecutor's actions were unpreserved. (*Id.* at 112.) Further, the People asserted that the court's charge was proper and that, in any event, petitioner's claims were once again not preserved. (ECF No. 9-12, State Ct. R. at 6-9.) Finally, regarding the ineffective counsel claim, the People argued that petitioner's attorney had provided meaningful and constitutionally sufficient representation. (*Id.* at 16.) Shortly thereafter, petitioner filed a reply brief further asserting that petitioner was denied a fair trial based on the claims asserted. (*Id.* at 23-34.)

On November 7, 2012, the Appellate Court denied the defendant's direct appeal. *People v. Gutierrez*, 952 N.Y.S.2d 897 (2012). The court held that the claims regarding the inadequate interpreter were unpreserved for appellate review. (*Id.* at 898.) The court also held that the failure of petitioner's counsel to object to the conduct of the interpreter, the court, or the prosecutor on cross examination and summation did not deprive petitioner of effective assistance of counsel. (*Id.*) All other claims by petitioner were found to not be preserved for appellate review. (*Id.*) On November 26, 2012, petitioner sought leave to appeal the decision to the New York Court of Appeals. On July 16, 2013, the application was

denied by the Court of Appeals. *People v. Gutierrez*, 994 N.E.2d 394 (2013).

## B. Motion to Reargue

On November 28, 2012, petitioner filed a motion to reargue with the Supreme Court Appellate Division. On February 13, 2013, the Second Judicial Department of the Appellate Division unanimously denied the motion to reargue. *People v. Gutierrez*, 21 N.Y.3d 1074 (2013).

## C. Motion to Reconsider

On July 28, 2013, Petitioner submitted a request to reconsider the Court of Appeal's denial of his application for leave. (ECF No. 9-12, State Ct. R. at 116.) Petitioner raised two issues in the request, (1) whether an attorney may delegate to his client the strategic decision about lesser charges and (2) whether the trial judge should have made a reasonable inquiry as to whether the same interpreter should have been used throughout the trial. *(Id.* at 116-119.) On August 12, 2013, petitioner submitted a supplemental request to reconsider, which offered a new argument: that defense counsel's decision to allow petitioner to decide whether a charge for a lesser included offense would be included the jury instructions created a hybrid representation. (*Id.* at 120-122.) On September 17, 2013, the court denied the motion for reconsideration. (*Id.* at 127.)

D. Supreme Court

On November 29, 2013, petitioner filed a petition for a writ of *certiorari* with the Supreme Court of the United States. On January 27, 2017, the petition was denied. *Gutierrez v. New York*, 134 S. Ct. 1034 (2014).

## STANDARD OF REVIEW

A writ of *habeas corpus* proceeding with an individual in state custody is governed by the rules outlined in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254 of AEDPA provides that a district court shall issue a writ of *habeas corpus* for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Further, there is a one-year statute of limitations for "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1); *see generally* 28 U.S.C. § 2244(d).

A district court shall not grant a writ of *habeas corpus* unless "the applicant has exhausted the remedies available in the courts of the State. . . there is an absence of available State corrective process," or "circumstances exist that render [such State corrective] process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (B). Even if a petitioner has not exhausted all

17

state remedies, the district court may still deny the
application for a writ of *habeas corpus* on the merits.  28
U.S.C. § 2254(b)(2).

A district court may grant a writ of *habeas corpus* for
claims that were adjudicated on the merits in state court where
the adjudication produced a decision that the district court
views as "contrary to, or involved an unreasonable application
of, clearly established Federal law, as determined by the
Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).
"A state court 'adjudicate[s]' a state prisoner's federal claim
on the merits when it (1) disposes of the claim 'on the merits,'
and (2) reduces its disposition to judgment." *Sellan v.
Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (brackets in original)
(citing 28 U.S.C. § 2254(d)(1)); *see also Reznikov v. David*,
Nos. 05-CV-1006 (RRM), 05-CV-1008 (RRM), 2009 WL 424742, at *3
(E.D.N.Y. Feb. 20, 2009) ("Under AEDPA, a proper merits
adjudication requires only that (a) a federal claim be raised,
and (b) that it be disposed of on substantive, rather than
procedural grounds."). "When a state court [adjudicates a
federal claim on the merits], a federal habeas court must defer
in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state
court's decision on the federal claim—even if the state court
does not explicitly refer to either the federal claim or to
relevant federal case law." *Sellan*, 261 F.3d at 312.

When reviewing the claims clearly established by federal law, the court is limited to the jurisprudence of the Supreme Court at the time of the relevant state court decision. *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005). District courts must independently analyze if there is an unreasonable application of federal law as outlined by the Supreme Court or if the decision of the state courts is contrary to the federal law. *Stultz v. Artus*, No. 04-CV-3170, 2013 WL 937830, at *5 (E.D.N.Y. Mar. 8, 2013). A state court's decision in a case is considered to contradict federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., concurring and writing for the majority in this part). An unreasonable application of federal law occurs when "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Unreasonableness is measured objectively, and requires "a 'higher threshold' than 'incorrect.'" *Stultz*, 2013 WL 937830, at *5 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The state court's application must have "[s]ome increment of incorrectness beyond error. . . [H]owever . . . the increment

19

need not be great[.]" *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). If a district court determines that a state court's application of law was unreasonable, "it must next consider whether such error was harmless." *Stultz*, 2013 WL 937830, at *5 (citations and internal quotations omitted).

Apart from a state court's unreasonable or contrary application of federal law, a district court may grant a writ of *habeas corpus* when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). State court determinations of facts are presumed correct, however, and a petitioner in a *habeas corpus* proceeding bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A district court therefore "may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Nevada v. Jackson*, 133 S.Ct. 1990, 1992 (2013) (per curiam) (citations and internal quotation marks omitted). A federal court "cannot grant habeas relief where a petitioner's claim pursuant to applicable federal law, or the U.S. Constitution, has been adjudicated on its merits in state court proceedings in a manner that is not manifestly contrary to

common sense." *Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) (quoting *Anderson v. Miller*, 346 F.3d 315, 324 (2d Cir. 2003)).

In the instant action, petitioner is proceeding *pro se*. A *pro se* petitioner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted), and are construed "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted). "Nonetheless, a *pro se* [litigant] is not exempt from compliance with relevant rules of procedural and substantive law." *Rivera v. United States*, No. 06-CV-5140, 2006 WL 3337511, at *1 (E.D.N.Y. Oct. 4, 2006) (citing *Faretta v. California*, 422 U.S. 806, 834 n.36 (1975)). Petitioner's papers are evaluated accordingly.

## DISCUSSION

On November 19. 2014, petitioner filed this timely petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 seeking to vacate his conviction. In his petition, petitioner asserts claims that are procedurally barred, claims that are unexhausted and claims that are exhausted. Generally, a state prisoner seeking federal *habeas* review must first exhaust available state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A)

21

("An application for a writ of habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State."). In order to satisfy the exhaustion requirement, a *habeas* petitioner must give the state courts a fair opportunity to review the claims and correct any alleged error. *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 191 (2d Cir.1982) (*see also Rhines v. Weber*, 544 U.S. 269, 273, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) "[I]nterests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims"). Thus, the federal *habeas* statute provides a "simple and clear instruction to potential litigants: before you bring any [habeas] claims to federal court, be sure that you have first taken each one to state court." *Rhines*, 544 U.S. at 276-77 (quoting *Rose v. Lundy*, 455 U.S. 509, 520(1982) (internal quotation marks omitted)).

In light of the total exhaustion requirement, a district court faced with a *habeas* petition containing exhausted and unexhausted claims, as presented in the instant petition, generally has three options. First, the court may dismiss the unexhausted claim without prejudice. *See Rhines*, 544 U.S. at 274, 278. Second, if the claim is plainly meritless, the court may deny the claim on the merits, notwithstanding the petitioner's failure to exhaust. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Rhines,* 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless"). Third, where an unexhausted claim is contained in a petition along with exhausted claims, a district court may either invite petitioner to delete the unexhausted claims and proceed with only the exhausted claims, or, in order to avoid foreclosing federal review of the unexhausted claims, under "limited circumstances," the court may "stay the petition and hold it in abeyance while petitioner returns to state court to exhaust his previously unexhausted claims." *Rhines,* 544 U.S. at 275-77. Specifically, a district court may only stay a mixed petition for a writ of *habeas corpus* if: (1) good cause exists for petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not "plainly meritless," and (3) petitioner has not engaged in intentionally dilatory litigation tactics. *See id.* at 277-78.

In his petition for a writ of *habeas corpus,* petitioner raised five claims. Three of the claims are exhausted and two are not. Petitioner fails to show good cause for a stay in order to exhaust his unexhausted claims. For the reasons explained below, the claims in the instant petition for *habeas* relief are denied.

A. Claims Unpreserved for Appellate Review

Petitioner's appeal to the Appellate Division of the New York State Supreme Court was denied because petitioner failed to raise the objections during his trial, and thus preserve them for appeal.

### 1. Legal Standard

A petitioner's federal claim may be barred procedurally if it was decided by the state courts on "independent and adequate" grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). In determining whether a procedural rule is independent, the "state courts must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "clearly and expressly stating that it's judgement [sic] rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 261-65 (1989).

Next, to establish if a procedural rule is adequate the court must examine if it is "firmly established and regularly followed by the state." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999). Federal courts generally will not consider a federal issue in a case "if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Garvey v. Duncan,* 485 F.3d 709, 713 (2d Cir.2007) (quoting *Lee v. Kemna,* 534 U.S. 362, 375, (2002)).

A federal court reviewing a *habeas* claim cannot review a procedurally barred claim on the merits unless the petitioner can show "cause for the default and actual prejudice because of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A petitioner can demonstrate cause by showing, "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778, 2010 WL 5125317, at *3 (E.D.N.Y. Dec. 9, 2010) (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)).

To overcome a procedural default, the petitioner must show that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 536.

### 2. Application

On direct appeal, the Appellate Division clearly decided that the challenges made by petitioner regarding whether he was denied a fair trial because of the interpreter, the prosecutor's actions during cross examination and summation, and the charge to the jury and jury instructions, were all

25

unpreserved for appellate review pursuant to New York's
contemporaneous objection rule, C.P.L. § 470.05(2). *See*
*Gutierrez*, 952 N.Y.S.2d at 897. ("The defendant's contention that
he was deprived of a fair trial because a court interpreter
was unable to properly perform her duties is unpreserved for
appellate review (*see* CPL 470.05[2]). . . the defendant's
remaining contentions are unpreserved for appellate review, and
we decline to review them in the exercise of our interest of
justice jurisdiction.").

"New York's contemporaneous objection rule provides
that a party seeking to preserve a claim of error at trial must
lodge a protest to the objectionable ruling 'at the time of such
ruling ... or at any subsequent time when the trial court had an
opportunity of effectively changing the same.'" *Whitley v.*
*Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (citing C.P.L. §
470.05(2)). "New York courts consistently interpret § 470.05(2)
to require that a defendant specify the grounds of alleged error
in sufficient detail so that the trial court may have a fair
opportunity to rectify any error." *Garvey v. Duncan*, 485 F.3d
709, 715 (2d Cir. 2007).

New York Criminal Procedure Law § 470.05 requires a
defendant to raise a specific justification objection during
trial for the issue to be preserved on appeal. *See People v.*
*Smiley*, 755 N.Y.S.2d 870 (N.Y. App. Div. 2003) (citing C.P.L.

26

470.05) ("The defendant's contention that the People failed to disprove his justification defense beyond a reasonable doubt is unpreserved for appellate review.").

Under 28 U.S.C. § 2254, a district court may not grant a *habeas* petition made by "a person in custody pursuant to the judgment of a State court" unless the "applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To meet the exhaustion requirement, petitioner must have "(i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in the lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen. of New York,* 280 F.3d 87, 94 (2d. Cir.2001) (citing *Picard v. Connor,* 404 U.S. 270, 276-77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The state court applied an independent New York state law, C.P.L. § 470.05(2), that states the criteria to establish that these specific claims are barred from appellate review because they were not preserved by a specific objection. "Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law". *Ramirez,* 280 F.3d at 94. Where a claim is exhausted but procedurally barred, a court may

nonetheless review it if petitioner shows "cause for the default

and prejudice, or demonstrate[s] that failure to consider

the claim will result in a miscarriage of justice (i.e., the

petitioner is actually innocent)." *Aparicio,* 269 F.3d at 90

(citing *Coleman,* 501 U.S. at 748-50).

Petitioner is unable to show cause and prejudice, or

that a fundamental miscarriage of justice will occur in absence

of review. In its decision to affirm the conviction, the

Appellate Division held that the claims regarding the court

interpreter, the court's charges to the jury, and the failure of

the court to intervene during summation were all unpreserved for

appellate review. *See Gutierrez,* 952 N.Y.S.2d at 897. In the

state of New York, courts have regularly determined that for a

party to preserve a question of law for review, an objection at

trial must occur. By using this precedent, the Appellate

Division relied on a state procedural rule.

Petitioner failed to survive the procedural bar by

showing cause or prejudice. Although cause for failure to

preserve a claim can be met by petitioner showing his counsel

was ineffective, petitioner fails to meet this burden as well.

Further, petitioner does not show that there would be any

prejudice if these claims were not considered or that it would

impact the case to the point of a different verdict. For these

forgoing reasons, claims 1(A), 1(B), 1(D), 1(E), 1(F), 2(A), 2(B), and 2(C), are procedurally barred from being heard.

## B. Ineffective Counsel Claim

Petitioner also claims that his counsel was ineffective for failing to object to the People's summation, and to the interpreter, and for following his client's wishes regarding the lesser included offense charge. To meet the *Strickland* standard, petitioner must show that the actions of his counsel "fell below an objective standard of reasonableness" and that "but for" these actions the decision in his case would have had a different outcome. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Here, petitioner fails to establish under *Strickland* that his counsel's actions fell below an objective standard of reasonableness and that the outcome of the trial would have been different, but for the alleged ineffectiveness, and thus fails to meet his burden. *Strickland v. Washington*, 466 U.S. 668 (1984).

### 1. Legal Standard

Under the Sixth Amendment, a criminal defendant is afforded "the right . . .to have the Assistance of Counsel for his Defense." U.S. Const. Amend. VI. A defendant is not guaranteed "perfect counsel," but rather, "*effective* assistance of counsel." *Constant v. Martuscello*, 119 F. Supp. 3d 87, 142 (E.D.N.Y. 2015) (emphasis in original) (internal quotation marks

omitted) (quoting *Burt v. Titlow*, 134 S.Ct. 10, 18 (2013);

*McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

In order for a petitioner to show that they can fundamentally establish a claim of ineffective assistance of counsel, they must meet the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 691 (1984). A petitioner must show that: (1) counsel's performance was deficient, meaning that it "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The two prongs may be addressed in either order. *Id.* at 697. Further, a court assessing an ineffective assistance claim is not required "to address both components of the inquiry if the defendant makes an insufficient showing on one." *(Id).*

The first prong's "reasonableness" analysis is determined by what the court views as "prevailing professional norms." *Id.* at 688. Generally, "there is a strong presumption that counsel's actions 'might be considered sound trial strategy." *Stultz*, 2013 WL 937830, at *7 (quoting *Strickland*, 466 U.S. at 688-89). The court may presume that counsel has acted reasonably where "counsel is prepared and familiar with the relevant facts and legal principles." *Brown v. Phillips*, No. 03-CV-0361 (DGT), 2006 WL 656973, at *8 (E.D.N.Y. Mar. 12,

2006) (quoting *Farrington v. Senkowski*, 19 F. Supp. 2d 176, 179 (S.D.N.Y. 1998)).

Under the second prong, prejudice, a "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury," id. at 695, and petitioner must "affirmatively prove prejudice arising from counsel's allegedly deficient representation," *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (citations and internal quotation marks omitted).

"[T]he standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Due to the heightened deference under AEDPA, "[a] federal court reviewing a state court's determination regarding ineffective assistance of counsel has been characterized as 'doubly' deferential by the Supreme Court." *Constant*, 119 F. Supp. 3d at 143 (quoting *Harrington*, 562 U.S. at 105). Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable" but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

## 2. Application

The Appellate Division adjudicated petitioner's ineffective assistance of counsel claim on the merits and held

that "defense counsel's failure, inter alia, to object to the prosecutor's remarks during summation did not deprive the defendant of the effective assistance of counsel". *People v. Gutierrez*, 952 N.Y.S.2d 897 (2012).

When determining how to rule on petitioner's ineffective assistant of counsel claim, the Appellate Division applied the state of New York's standard.[2] When ruling on petitioner's ineffective assistance of counsel claim, the Appellate Division applied New York State's "meaningful representation" standard. *See Id.* "The Second Circuit has repeatedly emphasized that the New York standard for ineffective assistance of counsel is not contrary to *Strickland*." *Kelly v. Lee*, No. 11-CV-3903, 2014 WL 4699952, at *12 (E.D.N.Y. Sept. 22, 2014); *see also Eze v. Senkowski*, 321 F.3d 110, 122-24 (2d Cir. 2003). Thus, the only difference between the second prong of the New York standard and the federal standard is the holistic approach the state court takes on review. *See Kelly*, 2014 WL 4699952, at *13 (explaining that under the New York standard "prejudice is examined more generally in the context of whether the defendant received meaningful representation" (citation and internal quotation marks omitted)). The difference is not

---

[2] Though the court does not explicitly state which standard they are applying, the cases they reference use the legal standard of New York State.

sufficient to render the Appellate Division's decision contrary to or an unreasonable application of Supreme Court law.

When evaluating a claim for ineffective assistance of counsel under AEDPA, the court must determine, "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105. There are certainly reasonable arguments here that defense counsel satisfied the *Strickland* standard and provided adequate representation to petitioner. Petitioner's claim that he was denied effective assistance of counsel when the defense counsel failed to object to the use of the interpreter, the prosecution's summation, and consulting petitioner regarding whether to include the lesser included offense of manslaughter in the jury charge does not satisfy the first prong of *Strickland*: it was not unreasonable for the state court to find that defense counsel's representation was not deficient.

First, upon stating that she needed a break due to difficulty concentrating, the interpreter was given one. (ECF No. 9-4 at 113.) The interpreter asked for another break and was briefly denied one because defense counsel was in the middle of a cross examination, (ECF No. 9-5 at 4), however after the interpreter again asked for another break, the court granted the request. (*Id.* at 8.) The court then received reports that the interpreter felt abused and wished not to re-enter the court.

(*Id.*)  After the court determined that there was not much time needed to finish the cross-examination, the court interpreter re-entered and began interpreting again.  (*Id.* at 8-10.)  It is unclear in the record whether she reentered of her own accord or was asked to do so by the court.  (*Id.*)  Overall, the court interpreter's complaints were limited to a brief period—she only expressed an issue with concentration well into the cross-examination of the witness.  (ECF No. 9-4 at 113.)

Most importantly, there were no indications and there is no allegation that the interpreter was not correctly interpreting the testimony.  Indeed, there were no complaints from Biz, who spoke sufficient English to be reminded to speak Portuguese.  *See People v. Felix*, 272 A.D.2d 410 (2d Dept. 2000) (finding that where a complainant who spoke some English failed to signal in any way that the interpreter was not translating correctly and did not have evidence of error, the burden of proving the interpreter was failing to perform the job was not met).  Thus it was reasonable for petitioner's counsel to not object.  The decision not to object may have been a strategic decision as defense counsel was in the middle of a cross examination and did not see an issue with the way answers were being delivered by the interpreter.

Petitioner was not denied effective assistance of counsel when defense counsel did not object to parts of the

prosecutor's summation that petitioner alleges biased the jury against petitioner. Petitioner claims that the prosecutor improperly stated her opinion, improperly stated that petitioner had lied, improperly vouched for Biz's testimony, improperly inflamed the jury, and improperly described petitioner running away from the scene of the crime. (ECF No. 9-11 at 45.) Petitioner stated that the People voiced their personal opinions of petitioner's guilt when they opened the summation with "he did it" and that he was "guilty of murder" along with other comments Petitioner alleged were inflammatory. (*Id.* at 40-41, 51, 54.) Petitioner also argued that the prosecutor acted improperly in opining on his guilt, saying, "everybody on the street could tell who the victim was and who the perpetrator was, the guy who is running away with the broken bottle is the perpetrator," (*Id.* at 55), and stating that, "if both of the [victims] had been killed inside of that apartment, ladies and gentlemen, he never would have been caught." (*Id.* at 47.)

A conviction on a criminal charge should not be "lightly overturned based on a prosecutor's comments standing alone" in what appears to be an otherwise fair proceeding. *United States v. Young,* 470 U.S. 1, 11 (1985). When looking at a prosecutor's remarks and determining if they violated a defendant's constitutional rights, a prosecutor's remarks must create such an unfair trial that the resulting conviction was

the result of a denial of due process. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974); *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir. 1986). A prosecutor's alleged misconduct during summation is grounds for reversal only when there is a "substantial prejudice" towards the defendant because of those specific misconduct. *United States v. Tutino,* 883 F.2d 1125, 1136 (2d Cir. 1989), *cert. denied,* 110 S.Ct. 1139 (1990) *United States v. Nersesian,* 824 F.2d 1294, 1327 (2d Cir.), *cert. denied,* 484 U.S. 957, (1987). Thus, we must consider how prejudicial the prosecutor's conduct was during summation and if there are any measures the trial court could have used or did use to cure the prejudice. *See United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir. 1981), *cert. denied,* 456 U.S. 989 (1982). The court must then decide whether conviction was certain absent the prejudicial conduct. *Id.*

On review of petitioner's claims, the prosecutor's summations, the objections that the defense counsel raised, and the evidence presented, it is unlikely that the challenged statements in the prosecutor's summation affected the jury's reasoning and ability to conclude and judge the evidence fairly. *Young,* 470 U.S. at 12-13. The issues raised in petitioner's claims are largely refuted by respondent's affidavit, which explains the responsive nature of the People's comments, which were based on the evidence and proper, given what the defense

36

had said in summation.  When considering comments made by a prosecutor, it is appropriate for an appellate court to apply the "invited response" or "invited reply" rule, which the Supreme Court explained in *Lawn v. United States,* 355 U.S. 339, (1958).  *Id.* at 11.  Given that, in this instance, the defense council attacked the credibility of the prosecution's witnesses, and vouched for the defendant, it is not unreasonable that the prosecution responded.  *Id.*  Importantly, petitioner's counsel did object to other parts of the summation.  Defense counsel's reasons for not objecting to other aspects of the prosecutor's summation have not been shown by petitioner to have rendered counsel's assistance ineffective.

Further, the evidence against petitioner was strong, and the prosecutor merely commented on the evidence in response to the defense's arguments.  Petitioner was found fleeing the scene after he used a fake name at a hotel and then proceeded to go home with a woman he was paying for sex.  Petitioner's claim of self-defense was refuted by the medical doctor's assertion that petitioner's injuries and cuts were superficial and only required a band aid, compared to the injuries resulting in the death of one victim, and the injury with knife wounds, inflicted from behind, on the second victim.  Given the weight of evidence against petitioner prior to summation, the comments made by the

prosecutor in the summation did not render the trial
fundamentally unfair.

Petitioner also alleges that he has been denied
effective assistance because his defense counsel waived
inclusion in the charges of the lesser included offense of
manslaughter after consulting with petitioner. The court asked
petitioner and confirmed on record that petitioner wanted to
omit the lesser charge. (ECF No. 9-8 at 117-118.) Upon
confirmation, the defense reviewed his clients stated preference
and waived the lower charge.

There are potential dangers for the defense if lesser
included offenses are in the charge, a factor that defense
counsel often incorporate into their strategy. *See United
States v. Tsanas,* 572 F.2d 340, 345 (2d Cir. 1978), *cert.
denied,* 435 U.S. 995 (1978). As explained by the court in
*United States v. Tsanas*, a defendant faces the possibility that
the "advantage gained by giving the jury an option between a
conviction on the greater charge and setting him free is
counterbalanced by the danger that a juror who could on no
account have been persuaded to convict on the greater and is not
truly convinced beyond a reasonable doubt of all elements of the
lesser offense may nevertheless convict on the latter." *Id.* at
345-346. The decision to include or omit a lesser included
offense instruction is a matter of trial strategy and is

entitled to deference, *see Cuevas v. Henderson,* 801 F.2d 586, 590 (2d Cir.1986) (indicating "reluctance to second-guess matters of trial strategy"), *cert. denied,* 480 U.S. 908 (1987), and thus it does not fall outside the bounds of reasonable professional conduct. *See Torres v. Stinson,* No. 97-cv-5310 (JG), 2000 WL 1919916, at *6 (E.D.N.Y. Dec. 29, 2000) (holding that submission of lesser included offenses may give the jury the ability to find guilt in a crime where the prosecution was unable to prove the elements of the original crime charged; thus, failure to include lesser included offenses may be a proper trial strategy); *Grant v. Bara,* No. 87-CV-9217, 1989 WL 146796, at *2 (S.D.N.Y. Nov. 28, 1989) (holding whether to include lesser included offenses is a trial strategy and is entitled to deference). *See Colon v. Smith,* 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989) (holding that failure to request lesser included offenses may be a proper trial strategy).

Though it is not necessary to address the second *Strickland* prong, it bears mentioning that petitioner cannot establish sufficient prejudice to undermine the outcome of his criminal trial. Accordingly, petitioner's claim for ineffective assistance of counsel is denied.

### C. Unexhausted Claims

#### 1. Legal Standard

A district court shall not grant a writ of *habeas*

*corpus* unless "the applicant has exhausted the remedies available in the courts of the State," "there is an absence of available State corrective process," or "circumstances exist that render [such State corrective] process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A)(B). If claims have not been exhausted, and cannot be reviewed due to state procedural processes, a district court cannot review the claims on *habeas* review. *See Rhines,* 544 U.S. at 277.

### 2. Application

Petitioner failed to raise his hybrid representation argument, and the claim regarding the trial court's duty to intervene, on direct appeal. As a result, Petitioner cannot raise that constitutional challenge in a state post-judgment proceeding because state law bars presentation of claims on collateral review that could have been raised on direct appeal. *See* N.Y.C.P.L. 440.10(2(C); *People v. Cooks,* 67 N.Y.2d 100, 103 (1986). Thus, petitioner's claims are barred from review in this Court. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir. 1991); *Strogov v. Attorney Gen. of State of N.Y,* 191 F.3d 188, 193 (2d Cir. 1999).

In his federal appeal, petitioner claims he was denied a fair trial because the trial court did not warn him of the dangers of hybrid representation when he told the court he did not want lesser offenses included in the jury charges. Further,

he claim the trial court failed to prevent the prosecution from proceeding with an improper summation. Both claims are from review by this court because of procedural default. Petitioner's claims were not raised in the direct appeal to the Appellate Division, and New York state rules prevent petitioner from litigating the claims now. Petitioner has not shown that denial of relief will result in a fundamental miscarriage of justice. As to cause and prejudice, petitioner offers no justification for his failure to raise these claims in the state courts, and nothing in the record indicates that his default was because of some objective element external to the defense. *See Amadeo v. Zant*, 486 U.S. 214 (1988); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Because petitioner has not established cause for the procedural default, this court need not address whether petitioner would be prejudiced by failure to review these claims. *See Murray v. Carrier*, 477 U.S. at 498 (federal courts should adhere to the "cause and prejudice test" in the conjunctive); *Francis v. Henderson*, 425 U.S. 536, 542 (1976) (requiring not only a showing of cause for the procedural default, but also a showing of actual prejudice).

## CONCLUSION

For the reasons set forth above, the instant petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is

DENIED in its entirety. The Court declines to issue a certification of appealability because petitioner has not shown that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Middleton v. Att'ys Gen. of States of N.Y., Pennsylvania,*396 F.3d 207, 209 (2d Cir. 2005); see also 28 U.S.C. § 2253 (c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").

Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore, in forma pauperis status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45, (1962). Clerk of Court is respectfully requested to enter judgment denying and dismissing the petition, serve a copy of this Memorandum and Order and the judgment on *pro se* petitioner, note service on the docket, and close the case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          April 5, 2019

                                              /s/
                                    _____
                                    **KIYO A. MATSUMOTO**
                                    United States District Judge